UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In re:

EDWARD F. TRACY,  Case No: 11-02256

Debtor.  Chapter 7

ORDER DENYING MOTION FOR SANCTIONS AND/OR CONTEMPT

This matter is before the Court on Edward F. Tracy's motion for sanctions or contempt against TIC Federal Credit Union. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order. For the following reasons, the Debtor's motion is due to be DENIED.

FACTS

Debtor Edward F. Tracy ("Debtor") filed for Chapter 7 bankruptcy protection on June 7, 2011. The Debtor entered into a reaffirmation agreement with TIC Federal Credit Union ("TIC") on October 18, 2011 regarding his automobile, a 2004 Jaguar S-Type (the "automobile"). About a month earlier, on September 20, 2011, TIC was granted relief from the automatic stay with regard to the Debtor's automobile. On or around October 11, 2011, TIC hired a repossession service to repossess the automobile. Around that same time, the Debtor contacted TIC to discuss reaffirming the automobile debt. Based upon the Debtor's willingness to enter into the reaffirmation agreement, TIC filed a motion to withdraw the order granting TIC relief from the automatic stay. That relief was granted by the Court on November 22, 2011. This Court held a hearing on the proposed reaffirmation agreement on November 10, 2011 and it was approved. An order reflecting the Court's approval was entered on December 15, 2011.

1

Part I of the reaffirmation agreement obligates Mr. Tracy to repay a total of $12,717.36 over 37 months at a 10% interest rate to TIC. The reaffirmation agreement deems that amount the "Amount Reaffirmed," a defined term in the agreement:

> "Amount Reaffirmed" means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specific in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that rise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

(Reaffirmation Agreement, Part V, Section C, paragraph 1). Part I, Section B of the reaffirmation agreement also states that the amount reaffirmed includes "unpaid principal, interest, and fees and costs (if any)." However, it specifies that the "unpaid principal, interest, and fees and costs (if any)" must arise on or before a certain date. The line in the reaffirmation agreement where that date should be entered is inexplicably left blank.

The reaffirmation agreement does not break down any of the fees and costs that were included in the amount reaffirmed; however, at least some portion of that amount represents attorneys' fees. The parties' filings and oral representations indicate that the agreement included $650 in attorneys' fees in favor of TIC. On March 20, 2012, TIC withdrew $775 from the Debtor's credit union account for attorneys' fees. The Debtor questioned the withdrawal stating that the Court had only approved $650 in attorneys' fees. Upon examination, TIC learned it had accidentally withdrawn too much money. Through an email sent to the Debtor on March 23, 2012, TIC explained that Mr. Robinson, the attorney who represented TIC with regard to the reaffirmation agreement, had charged TIC $775, rather than the $650 approved by the Court. As such, TIC mistakenly withdrew $775. Further, TIC told the Debtor that it had already recouped

$287.22 in attorneys' fees from the Debtor's account at a prior date. Therefore, TIC returned $412.22 to the Debtor. TIC's calculations were as follows:

| | |
|---|---|
| Attorneys' fees owed by the Debtor to TIC pursuant to the reaffirmation agreement: | $650.00 |
| Amount recouped by TIC from the Debtor prior to March 20: | ($287.22) |
| Amount owed by the Debtor after recoupment: | $362.78 |
| Amount mistakenly withdrawn for attorneys' fees by TIC: | ($775.00) |
| Amount refunded to the Debtor by TIC: | $412.22 |

On January 23, 2012, TIC charged a $125 "close fee" to the Debtor's account. TIC explained that the $125 fee related to a charge from the repossession company that it hired to repossess the Debtor's car prior to asking the Court to vacate the relief from stay order. TIC was not billed the $125 until December 13, 2011 and did not post the charge onto the Debtor's account until January.

The Debtor represented at oral argument that he paid off the loan to TIC on March 19, 2012. An account statement submitted to the Court supports that statement.

The Debtor filed a motion for contempt and/or sanctions on April 23, 2012 arguing that TIC's actions violated the court-approved reaffirmation agreement. TIC contested those accusations. This Court held a hearing and took the matter under advisement.

LAW

Pursuant to 11 U.S.C. § 105, a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Included within that broad grant of power is a bankruptcy court's ability to hold a party in contempt for violating a court order and to remedy that contempt through sanctions. *In re Bryer*, 386 B.R. 895, 899-900 (Bankr. S.D. Fla. 2008). Section 105(a) contempt sanctions are meant to "(1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the Court's order." *Id.* at

3

898. In addition to the statutory authority granted in § 105, federal courts maintain the inherent power to sanction contemptuous conduct to "achieve the orderly and expeditious disposition of cases." *Jove Engineering, Inc. v. Internal Revenue Service*, 92 F.3d 1539, 1553 (11th Cir. 1996). The burden to prove civil contempt is on the movant. *Id*. at 1545 (requiring a showing of clear and convincing evidence); *In re Thompson*, 456 B.R. 121, 137-38 (Bankr. M.D. Fla. 2010) (requiring a showing of a preponderance of the evidence in considering contempt for a discharge injunction violation).

The Debtor argues that all fees and costs paid in conjunction with the reaffirmation agreement were included in the Amount Reaffirmed. Based upon that, he takes issue with (1) the amount and manner in which he was charged for attorneys' fees associated with the reaffirmation agreement and (2) TIC's after-the-fact inclusion of a $125 fee to his account that was not included in the Amount Reaffirmed. The Debtor asks this Court to hold TIC in contempt for violating the reaffirmation agreement, to impose sanctions upon TIC, and to award him fees and costs associated with filing the underlying motion. The attorneys' fees and the $125 charge will be addressed separately.

1.Attorneys' Fees

TIC's actions with regard to the attorneys' fees do not warrant a finding of civil contempt. TIC asserts that it mistakenly withdrew too much money from the Debtor's account in order to satisfy the Debtor's obligation to pay $650 in attorneys' fees owed pursuant to the reaffirmation agreement. When the Debtor brought the overage to TIC's attention and TIC realized its mistake, it corrected the mistake and refunded $412.22 to the Debtor. The Debtor's motion indicates that he agrees with those facts:

> 7. Upon review of Debtor's reaffirmed loan with TIC, Debtor discovered that TIC deducted from Debtor's TIC savings

> account, without Debtor's consent, an amount for TIC's attorney fees associated with this case that was $412.22 more than this Honorable Court approved.
>
> 8. After Debtor contacted TIC on numerous occasions to dispute this amount, TIC eventually refunded said amount to Debtor.

(Debtor's Motion For Sanctions And/Or Contempt, at ¶¶ 7-8). Despite the Debtor's characterization of TIC's response, email correspondence between the Debtor and TIC show that the Debtor contacted TIC about the overcharge on March 21, 2012 and that TIC responded on March 23, 2012, acknowledging its mistake and promising to mail a refund check. TIC's mistake was inadvertent and it acted to remedy the mistake immediately. TIC corrected its mistake without the necessity of court intervention.

It is the Debtor's burden to demonstrate that contempt and sanctions are warranted based upon TIC's actions. He has failed to do so under either the preponderance of evidence or the clear and convincing standard. It is unclear to the Court how TIC's actions with regard to the attorneys' fees amount to a violation of the reaffirmation agreement. The reaffirmation agreement fixes the total amount of debt reaffirmed by the Debtor, which includes all other costs and fees. However, the reaffirmation agreement does not break down those charges or detail how and when they are to be paid. The reaffirmation agreement does not even include a date on or before which the costs and expenses included in the reaffirmation amount would be final. The evidence shows that the Debtor was responsible for $650 in attorneys' fees. Under the agreement, TIC was at liberty to collect the attorneys' fees from the Debtor and it took actions to do so in March of 2012. TIC's mistake in collecting a higher fee, followed by a quick correction of that mistake, does not warrant a finding of contempt.

In addition, a finding of contempt is not warranted because the Debtor has not demonstrated any losses stemming from TIC's conduct. The evidence shows that the Debtor

received a timely refund of the overcharge. Moreover, the Debtor has not demonstrated any other significant efforts, beyond sending some emails, to enforce the reaffirmation agreement with regard to the attorneys' fees. Further, a sanction to coerce TIC to comply with the reaffirmation agreement is unnecessary because TIC has not demonstrated a reluctance to act in accordance with the agreement. As such, a finding of contempt is not appropriate.

2. $125 Charge

A $125 charge was posted to the Debtor's account by TIC in January of 2012. TIC explains that the $125 charge was incurred in October of 2011, prior to the reaffirmation agreement, as part of an effort to repossess the Debtor's car after it received relief from the automatic stay. TIC further explains that it was not billed by the repossession service until December of 2011; hence the delay in posting the charge to the Debtor's account. The Debtor argues that TIC unlawfully added the $125 charge to his account in January of 2012 in violation of the reaffirmation agreement.

The Debtor's argument and evidence fail to prove, by a preponderance of evidence or otherwise, that TIC's actions violated the reaffirmation agreement. First, the reaffirmation agreement does not specifically outline the composition of the $12,717.36 Amount Reaffirmed. It has not been demonstrated to the Court that the $125 was not included in that amount. Second, the reaffirmation agreement, in Part V, Section C, paragraph 1, explains that additional charges may arise after the reaffirmation agreement if otherwise provided for the in the Debtor's credit agreement. The Debtor has failed to show that his credit agreement did not allow TIC to pass along charges incurred in enforcing its lien upon the Debtor's automobile, like repossession costs. Third, the reaffirmation agreement says that the Amount Reaffirmed included "unpaid principal, interest, and fees and costs (if any)." However, the reaffirmation agreement did not

6

include a date on or before which the interest, fees, and costs would be final. Therefore, even if the $125 charge was incurred after the execution of the reaffirmation agreement, the Debtor could not assert that the charge was added to his account too late, in violation of the reaffirmation agreement

Therefore, a finding of contempt with regard to the $125 charge is not warranted. The Debtor failed to show how the charge violated the reaffirmation agreement. As such, the charge did not violate any particular court order. TIC's explanation that the charge was incurred prior to the reaffirmation agreement is credible and it is of no moment that the charge was not billed or added to the Debtor's account until several months after the Court approved the reaffirmation agreement.

THEREFORE IT IS ORDERED

1. The Debtor's Motion For Sanctions And/Or Contempt is DENIED.

Dated: June 27, 2012

_____
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE